UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KARL HUGO, Plaintiff, 650 S. Lowell #527 Portland, OR 97239

v.

SARA SILBERGER and RAQUEL HUGO, Defendants.

3:25-CV-747-SB

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND OTHER CLAIMS

(42 U.S.C. §§ 1983, 1985(3), 1988; Title II of the ADA; Fourteenth Amendment)

I. INTRODUCTORY STATEMENT

This action is brought by Plaintiff Karl Hugo, a disabled father and survivor of systemic legal abuse, against former partner Raquel Hugo and attorney Sara Silberger. Defendants conspired to weaponize falsehood, exploit disability stigma, manipulate gender bias, and engineer judicial bias through coordinated courtroom deceit. Their objective: to alienate Plaintiff from his daughter, destroy his reputation, and secure procedural victories through unlawful, unconstitutional means.

Defendant Silberger, acting under color of state law as a licensed family law attorney, knowingly introduced a fabricated rape allegation in open court--without evidence, investigation, or any legitimate prosecutorial action--during a restraining order renewal hearing. This was done while a substitute judge presided and while Plaintiff was represented by a substitute attorney unfamiliar with the case. This was not coincidence; it was strategy.

Defendant Raquel Hugo, knowing Plaintiff's cognitive vulnerabilities from a traumatic brain injury, coached testimony, provided confidential medical context, and knowingly supported a narrative intended to paint Plaintiff as dangerous and irredeemable. Together, Defendants engaged in a deliberate conspiracy under 42 U.S.C. § 1985(3), violated Plaintiff's rights under 42 U.S.C. § 1983, and committed acts that constitute discrimination and due process violations under the Fourteenth Amendment and the Americans with Disabilities Act.

## II. EXPLOITATION OF INSTITUTIONAL BIAS THROUGH COORDINATED MALICE

Defendant Sara Silberger did not merely operate within a biased court system--she strategically exploited its predictable prejudices against disabled, male, emotionally deregulated parents. She did so with the informed assistance of Defendant Raquel Hugo, who, having lived with Plaintiff for years, understood how disability bias operated and where the courts were most likely to default to fear, distrust, and alienation.

Defendant Hugo weaponized this insight, feeding Plaintiff's vulnerabilities and diagnostic history to Silberger for use as legal ammunition. Together, they built a procedural wrecking ball, not around truth, but around what the court would likely believe with no scrutiny. They knew that family court routinely favors maternal narratives, that judicial fear of male emotionality often overrides evidence, and that mental disability can be cast as moral failure without resistance.

This was not opportunistic bias--it was planned, informed, and malicious. It converted Plaintiff's injury into a verdict, his efforts at recovery into incrimination, and his daughter into a pawn.

This conduct is the essence of a conspiracy to deprive civil rights under 42 U.S.C. § 1985(3). It was not legal advocacy--it was legal sabotage.

## III. JUDICIAL COMPLICITY AND INSTITUTIONAL FAILURE

Judge Kathryn Villa-Smith presided over all prior and subsequent hearings in the family court case. She demonstrated consistent judicial bias by reinforcing the false narrative advanced by Defendants, failing to accommodate Plaintiff's disability, refusing to enforce her own visitation orders, and permitting a no-contact order without Plaintiff's signature or due process. Although she was not present during the December 11, 2017 hearing where the rape allegation was first introduced by Judge Holmes-Hehn, she later accepted and incorporated that allegation into her rulings as if it were judicially established fact. Villa-Smith made no effort to inquire about the allegation's origin, context, or evidence. Her rulings institutionalized an unproven claim and

deepened the systemic deprivation of Plaintiff's constitutional rights. Judge Villa-Smith also accepted and relied on expert testimony from a neurologist who had never examined or even met Plaintiff. This medical opinion--asserting Plaintiff would never recover from his traumatic brain injury--was introduced by Defendant Silberger without basis, solely to reinforce a fabricated narrative of instability. Rather than questioning the validity of this testimony, Judge Villa-Smith treated it as authoritative. This represents not only a judicial failure of evidentiary diligence but also an institutional reinforcement of a medically unsupported and discriminatory claim.

IV. LEGAL CLAIMS

A. Violation of Civil Rights Under 42 U.S.C. § 1983

Plaintiff incorporates all preceding paragraphs. Defendant Sara Silberger, while acting under color of state law as a licensed attorney and officer of the court, deprived Plaintiff of rights secured by the Constitution and laws of the United States, including his rights under the Fourteenth Amendment to due process and equal protection. Through fabricated claims, collusion with a party using medical and psychological information in bad faith, and courtroom manipulation, she functionally acted as a state actor in facilitating and executing the deprivation of civil rights. This conduct directly caused harm to Plaintiff's familial integrity, reputation, and personal liberty.

B. Civil Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1985(3)

The conspiracy detailed herein was deliberate and sustained. The false rape allegation was its most shocking expression--but only one part of a broader, coordinated scheme to deprive Plaintiff of constitutional protections and parental dignity.

Defendants entered into a conspiracy to violate Plaintiff's civil rights by coordinating false testimony, exploiting known court bias, and utilizing Plaintiff's traumatic brain injury as a vehicle to destroy his credibility and access to his child. The conspiracy was executed through overt acts including the introduction of knowingly false rape allegations, reliance on mental disability stereotypes, and systemic alienation tactics. These acts were motivated by animus toward Plaintiff's status as a disabled, male parent and executed with intent to injure.

C. Discrimination Under Title II of the Americans with Disabilities Act (42 U.S.C. § 12132)

Plaintiff was denied the benefits of a fair legal process because of his disability. Defendants' exploitation of his traumatic brain injury, and the court's failure to ensure disability accommodations or safeguards, constitutes a violation of the ADA. Plaintiff was treated not as a person entitled to protection, but as a threat to be neutralized through stigmatized distortion.

D. Violation of the Rehabilitation Act (29 U.S.C. § 794)

As a recipient of federal funds, the Oregon judicial system has obligations under the Rehabilitation Act. In failing to provide Plaintiff with access to unbiased legal process and permitting systemic discrimination to define case outcomes, the system enabled by Defendants' actions stands in violation of this statute.

E. Attorneys' Fees Under 42 U.S.C. § 1988

Plaintiff seeks reasonable attorneys' fees and costs of suit, should he secure any form of declaratory or injunctive relief, pursuant to 42 U.S.C. § 1988.

Relevant Case Law:

* Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982): Establishes that a private party can be a state actor under § 1983 when they act in concert with state officials or rely on state authority.

* West v. Atkins, 487 U.S. 42 (1988): Confirms that private individuals who misuse legal mechanisms in coordination with state actors can be held liable under § 1983.

* Griffin v. Breckenridge, 403 U.S. 88 (1971): Clarifies that § 1985(3) applies to private conspiracies that deprive individuals of constitutional rights, including through discriminatory animus.

* Kush v. Rutledge, 460 U.S. 719 (1983): Supports application of § 1985(3) beyond race to include conspiracies involving other protected classes, such as disability and gender.

* Tennessee v. Lane, 541 U.S. 509 (2004): Establishes that Title II of the ADA protects access to judicial services for individuals with disabilities.

* Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001): Holds public entities liable under both the ADA and Rehabilitation Act for failure to accommodate known disabilities in judicial settings.

V. PRAYER FOR RELIEF

Plaintiff seeks relief for the full scope of harm caused by a coordinated campaign of legal sabotage,

not merely for a single event. While the false rape allegation marked the most publicized and traumatic blow, the entire conspiracy must be recognized as the engine of civil rights deprivation.

WHEREFORE, Plaintiff Karl Hugo respectfully requests that this Court grant the following relief:

A. As to Defendant Sara Silberger:

1. Declaratory Relief: A judicial declaration that Defendant Silberger, acting under color of law, violated Plaintiff's constitutional rights under 42 U.S.C. §§ 1983 and 1985(3).

2. Injunctive Relief:

- Prohibit future use of unsubstantiated mental disability or trauma claims in legal filings without medical basis or review.

- Require annotation of court records introduced under false pretenses, including the false rape allegation.

3. Compensatory Damages: An award of no less than $2.5 million for emotional trauma, reputational damage, parental alienation, and legal consequence of false allegations.

4. Punitive Damages: An additional award of $1-2 million for malicious and bad faith misuse of the court process.

5. Attorneys' Fees: All legal fees and litigation costs pursuant to 42 U.S.C. § 1988.

6. Bar Referral: A formal referral to the Oregon State Bar for investigation, discipline, and disbarment consideration for ethical misconduct and civil rights violations.

B. As to Defendant Raquel Hugo:

1. Declaratory Relief: A finding that Defendant Hugo knowingly participated in a conspiracy to deprive Plaintiff of his constitutional rights under 42 U.S.C. § 1985(3).

2. Targeted Compensatory Damages: An award of $200,000 for emotional injury, loss of reputation, identity harm, and betrayal of shared family trust.

3. Any other equitable relief deemed just and proper by the Court.

IV. WEAPONIZATION OF THE #METOO MOVEMENT

Defendant Raquel Hugo, fully aware of public narratives around the #MeToo movement, knowingly and maliciously invoked a false allegation of rape in open court, anticipating that the court would

side with her by default due to societal and institutional bias in favor of accusers. This act of performance-based deception leveraged a social justice movement intended to protect real survivors and instead transformed it into a blunt instrument of parental erasure and judicial panic.

The fabricated allegation was never reported to police, never investigated, and never repeated in any legal context except as a tool to secure procedural advantage. Defendant Silberger enabled and elevated this tactic, creating a false appearance of credibility through legal presentation and courtroom theater. Together, they appropriated the public's trust in #MeToo and converted it into unjust institutional punishment against an already marginalized and disabled man.

This was not an act of survivor courage--it was a knowing abuse of feminist legitimacy to inflict harm through judicial manipulation.

VI. MOTIVATION AND MALICE: RAQUEL HUGO'S NEED FOR CONTROL

At the core of Defendant Raquel Hugo's actions was a driving need for control--over the narrative, over Plaintiff's reputation, and ultimately over their child. Her role in the conspiracy was not impulsive or reactionary; it was strategic and anchored in a desire to maintain power. When Plaintiff filed for divorce, that control fractured. Raquel responded not with grief, but with a calculated campaign to reassert dominance--socially, legally, and parentally. Every act of distortion, every fabricated narrative, and every court maneuver was a means of reclaiming unilateral control at Plaintiff's expense. This psychological impetus forms the foundation of her collaboration with Defendant Silberger and the resulting deprivation of Plaintiff's constitutional rights.

VII. VIOLATION OF ETHICAL MEDICAL STANDARDS: THE GOLDWATER PRINCIPLE

In support of their courtroom strategy, Defendants Raquel Hugo and Sara Silberger disclosed Plaintiff's private brain imaging--taken during his hospitalization and coma--to a neurologist who had never met, interviewed, or examined him. Based solely on those images, and without any direct evaluation or consent from Plaintiff, the neurologist offered a formal opinion in court that Plaintiff would "never recover" from his traumatic brain injury.

This use of detached medical analysis echoes the ethical violation now known as the Goldwater Rule: the prohibition against offering a psychiatric diagnosis of a person without a personal examination. Though this rule was established in psychiatry, the underlying ethical principle is consistent across all medical disciplines: a doctor should not offer clinical judgment on a person they have not evaluated.

By enabling and presenting this testimony, Defendants misused Plaintiff's private medical data to manufacture a narrative of permanent incapacity. The court accepted this testimony uncritically, without requiring a medical basis rooted in direct assessment. This was not only a violation of ethical boundaries and patient privacy--it was a direct act of structural discrimination, reinforcing stigma and undermining Plaintiff's legal and human credibility.

X_____  5/5/25