IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KARL HUGO,

               Plaintiff,

       v.

SARAH SILBERGER; RAQUEL HUGO,

               Defendants.

Case No. 3:25-cv-00747-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

      Karl Hugo ("Plaintiff") is a self-represented litigant, father, and traumatic brain injury survivor who suffers from a "cognitive disability that impairs [his] memory, processing speed, and verbal response under pressure."[1] Several years ago, Plaintiff and Plaintiff's ex-wife, Raquel Hugo ("Hugo"), were involved in domestic violence, divorce, and child custody proceedings

---

      [1] Hugo alleges these facts near the beginning of his operative second amended complaint, in which he "consolidates all facts and claims[.]"(Second Am. Compl. ("SAC") at 2, ECF No. 36.)

during which Sarah Silberger ("Silberger") (together with Hugo, "Defendants") served as Hugo's counsel.[2]

Plaintiff filed this action alleging that Defendants violated 42 U.S.C. §§ 1983 and 1985(3) ("Sections 1983 and 1985"), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), the civil Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), (d), and Oregon law.[3] Defendants now move to dismiss Plaintiff's second amended complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6), or, alternatively, strike the complaint under Oregon's anti-SLAPP statute, OR. REV. STAT. § 31.150(3).[4] (Def.'s Mot. Dismiss at 2; Def.

---

[2] Silberger asks the Court to take judicial notice of records from the underlying state court proceedings. (*See* Def. Silberger's Mot. Dismiss ("Def.'s Mot. Dismiss") at 1-2 & n.2, ECF No. 40, requesting judicial notice; Decl. Blake Fry Supp. Def.'s Mot. Dismiss ("Fry Decl.") ¶¶ 1-15 & Exs. 1-14, ECF No. 41, attaching records from the state court proceedings). The Court grants Silberger's request because the state court records have a direct relation to matters at issue here. *See Bykov v. Rosen*, 703 F. App'x 484, 487 (9th Cir. 2017) (holding that the "district court did not abuse its discretion by taking judicial notice of the Washington State court proceedings," and noting that "a court 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue'" (quoting *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992))).

[3] The Court takes judicial notice of the state tort actions that Plaintiff filed against Hugo and Silberger on April 11 and September 19, 2025, respectively. *See* Docket, *Hugo v. Hugo*, No. 25-cv-23158 (Multnomah Cnty. Cir. Ct. filed Apr. 11, 2025); Docket, *Hugo v. Silberger*, No. 25-cv-51709 (Multnomah Cnty. Cir. Ct. filed Sept. 19, 2025); *see also Luckey v. Mitchell*, No. 22-16556, 2023 WL 6389399, at *1 n.1 (9th Cir. Oct. 2, 2023) (taking "judicial notice of [other] court dockets"); FED. R. EVID. 201(c)(1) (noting that a court "may take judicial notice on its own"); *Pugh v. Anderson*, No. 21-16984, 2022 WL 17223041, at *1 (9th Cir. Nov. 25, 2022) (holding that "[t]he district court properly dismissed [the self-represented plaintiff's] action as duplicative because it [wa]s based on the same factual allegations as those in [an earlier-filed case]").

[4] "SLAPP is an acronym for strategic lawsuits against public participation." *Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 801 (9th Cir. 2022) (quoting *Handy v. Lane County*, 385 P.3d 1016, 1020 n.4 (Or. 2016))).

Hugo's Mot. Join at 1-4, ECF No. 54; *see also* ECF No. 86, granting Hugo's request to join

Silberger's motion).

      The Court has federal question and civil rights jurisdiction over Plaintiff's federal claims

and supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. §§ 1331, 1343(a),

and 1367(a), and all parties have consented to the jurisdiction of a magistrate judge under 28

U.S.C. § 636(c). For the reasons explained below, the Court GRANTS Defendants' motion to

dismiss.

## BACKGROUND[5]

      Plaintiff and Hugo were married in June 2006. (Fry Decl. Ex. 3 at 1 & Ex. 5 at 1.) About

two years later, a motorist struck Plaintiff while he was riding his bicycle, and he suffered a

severe traumatic brain injury and remained in a coma for several weeks. (SAC at 1-2, 5, 12, 19,

25; Decl. Def. Hugo Supp. Req. Join Silberger's Mot. Dismiss ("Hugo Decl.") ¶ 3, Ex. 3 at 1-2,

ECF No. 56.)

      In October 2014 and November 2016, Hugo filed petitions for a restraining order against

Plaintiff under Oregon's Family Abuse Prevention Act ("FAPA"), OR. REV. STAT. §§ 107.700-

.735.[6] (*See* Fry Decl. ¶¶ 2-3, Ex. 1 at 1 & Ex. 2 at 1, listing the events and orders on dockets for

---

    [5] The Court draws these facts from (1) Hugo's operative second amended complaint and
(2) matters of which the Court may (and did) take judicial notice. *See Olympic Forest Coal. v.
Coast Seafoods Co.*, 884 F.3d 901, 904-05 (9th Cir. 2018) (reviewing the denial of a motion to
dismiss under Rule 12(b)(6) and "recount[ing] the facts as alleged in the complaint and as
supplemented by a [record] . . . of which [the court] ha[d] taken judicial notice"). To the extent
that Hugo's second amended "complaint incorrectly summarizes or characterizes a legally
operative document . . . incorporated by reference . . . or subject to judicial notice, the document
itself is controlling." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023)
(simplified).

    [6] The state court consolidated the FAPA proceedings with Plaintiff and Hugo's divorce
proceeding (Case No. 14DR06970) and entered a stipulated judgment of dissolution in June

Multnomah County Circuit Court Case Nos. "14PO02991" and "16PO11019," both of which are
"Case Type: Protective Order – FAPA"; *id.* Ex. 3 at 1-9 & Ex. 5 at 1-8, attaching the petitions).
Hugo alleged that Plaintiff assaulted her during multiple incidents of domestic violence, some of
which prompted her to call 911 and she reported to police. (*Id.* Ex. 3 at 2-3, 7-9.) She also
alleged that medical providers diagnosed certain "inciden[ts]" as "neurological episodes" but
"domestic violence was becoming a regular [occurrence] . . . after [Plaintiff's] brain injury."
(*Id.* Ex. 3 at 8.)

The state court issued orders granting and renewing Hugo's petitions for FAPA
restraining orders in October 2014, October 2015, November 2016, September 2017, September
2018, September 2019, and November 2020. (Fry Decl. ¶¶ 5, 7, 9, Ex. 1 at 1, 3 & Ex. 2 at 1-3.)
The state court also issued an order in March 2021, dismissing Hugo's FAPA restraining order.
(*Id.* Ex. 3 at 3.)

During this time period, Plaintiff's then-counsel requested a hearing to contest Hugo's
FAPA restraining order. (*Id.* Ex. 2 at 1, Ex. 13 at 3 & Ex. 14 at 1; *see also* SAC at 13-15,
addressing Plaintiff's representation and describing the bar complaints that Plaintiff subsequently
filed). The state court granted the request and held a hearing on, among other dates, December
11, 2017. (Fry Decl. Ex. 2 at 2.) The state court received testimony from Hugo, upheld Hugo's
FAPA restraining order, and docketed a post-hearing order finding Hugo's "testimony to be
credible in all respects" and incorporating "reasons stated on the record." (*Id.* Ex. 2 at 2 & Ex. 14
at 1.)

///

---

2016. (Fry Decl. ¶¶ 2, 6, 12, Ex. 1 at 2, Ex. 5 at 1, Ex. 11 at 1-2 & Ex. 14 at 1; Hugo Decl. ¶ 3,
Ex. 4 at 1-2 & Ex. 5 at 1-2.)

Plaintiff filed this action on May 5, 2025. (ECF No. 1.) In his operative complaint, Plaintiff asserts claims against Defendants for violation of Sections 1983 and 1985(3), Title II of the ADA, Section 504 of the Rehabilitation Act, and the civil RICO Act, and a state law claim for intentional infliction of emotional distress. (SAC at 6-8.)

Plaintiff complains of Defendants' alleged "weaponization" and exploitation of his cognitive disability during the FAPA, dissolution, and child custody-related proceedings. (*See id.* at 1-3, noting that Silberger served in her "capacity" as Hugo's counsel "[a]t the time of the events giving rise to th[e] complaint," which "consolidates all [of Plaintiff's] facts and claims," and that Hugo was a "party to the same [state] family court proceedings" in which Defendants allegedly "participated in the introduction and perpetuation of a false criminal allegation that has never been substantiated and . . . caused long-term harm" to Plaintiff). Plaintiff alleges that Defendants' actions deprived him of four consecutive years of contact with his daughter and that each of his claims in this lawsuit are "rooted in [Defendants'] intentional exploitation of [his] protected legal status, the subornation of false testimony, and the system collapse of due process in a [state] courtroom unprepared to recognized what was happening within it." (*Id.* at 6.)

In particular, Plaintiff focuses on Hugo's testimony at the December 11, 2017 contested FAPA hearing, at which he claims that Silberger "elicited" a defamatory and "false allegation of rape" from Hugo. (*See id.* at 2, 5, alleging that this was "[t]he central act in [Defendants'] pattern," which "occurred on December 11, 2017" and marked the "culmination of [Defendants'] strategy"). Plaintiff also complains of the state court's "silence in the face of calculated narrative distortion" and "systemic gap[s]" in state "family law" proceedings and absence of "clear language, protections, or procedural guardrails for disabled parents navigating custody disputes." (*Id.* at 2-3.)

PAGE 5 – OPINION AND ORDER

LEGAL STANDARDS[7]

## I.    PLEADING REQUIREMENTS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II.    SELF-REPRESENTED LITIGANTS

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021), and should treat "pro se litigants . . . with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). The Supreme Court, however, has also recognized that "[d]istrict [courts] have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Thus, there are limits on the leeway that courts must afford to self-represented litigants.

---

[7] The Court describes only the Rule 12(b)(6) standard and declines to reach Defendants' alternative anti-SLAPP motion because, as explained below, Plaintiff fails to state any plausible federal claim.

*See Washington v. Kijakazi*, 72 F.4th 1029, 1040 (9th Cir. 2023) ("[T]here are limits to what a court must do to accommodate a party appearing pro se." (citing *Pliler*, 542 U.S. at 231)); *see also Atkins v. Montgomery*, No. 20-56007, 2024 WL 3594386, at *2 (9th Cir. July 31, 2024) (explaining that the "magistrate judge was under no obligation to provide additional guidance or instruction to [the plaintiff] on account of his pro se status, [nor was she] required to take into account the amount of time remaining on [the plaintiff's] one-year statute of limitations in requiring a response to her order," and noting that under Supreme Court precedent, "[d]istrict [courts] have no obligation to act as counsel or paralegal to pro se litigants" (quoting *Pliler*, 542 U.S. at 231)).

For example, "[a]lthough [courts] construe pro se pleadings liberally, especially in civil rights cases, [they] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)); *Salazar v. Regents of Univ. of Cal.*, 812 F. App'x 410, 412-13 (9th Cir. 2020) (same); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (observing that a court's "liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled") (simplified).

## DISCUSSION

Defendants move under Rule 12(b)(6) to dismiss Plaintiff's claims for failure state a claim upon which relief can be granted. (Def.'s Mot. Dismiss at 2; Def. Hugo's Mot. Join at 1-4; *see also* ECF No. 86, granting Hugo's request to join Silberger's motion). The Court agrees that Plaintiff's claims are deficient in several respects, and therefore grants Defendants' motion to dismiss.

I.    **FEDERAL CLAIMS**

A.    **The ADA and Rehabilitation Act**

The Court finds that Plaintiff's claims under Title II of the ADA suffer from incurable defects. The Court therefore grants Defendants' motion to dismiss Plaintiff's Title II claims with prejudice.

"The ADA is structured as separate titles governing different conduct: Title I, 42 U.S.C. §§ 12111-12117, covers discrimination in employment; Title II, 42 U.S.C. §§ 12131-12165, covers discrimination in public services; and Title III, 42 U.S.C. §§ 12181-12189, covers discrimination in public accommodations and services operated by private entities." *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015); *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 938 (2d Cir. 2024) ("The ADA is divided into five separate titles: Title I, Employment; Title II, Public Services; Title III, Public Accommodations; Title IV, Telecommunications; and Title V, Miscellaneous Provisions." (quoting *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 169 (2d Cir. 2013))).

Plaintiff asserts a claim against Defendants under Title II of the ADA.[8] (*See* SAC at 1-2, 4, 7, 19-20, 25-26, invoking "Title II" of the ADA and "42 U.S.C. § 12131"). Title II provides

---

[8] The operative complaint includes a section in which Plaintiff lists his six "legal claims and grounds for relief." (SAC at 6-8) (simplified). Although he primarily cites and references Title II of the ADA throughout his complaint, Plaintiff styles his third cause of action as a claim against Defendants under both Title II of the ADA and Section 504 of the Rehabilitation Act. (*Id.* at 7.) "Section 504 of the Rehabilitation Act prohibits disability discrimination by 'any program or activity receiving Federal financial assistance[,' which] . . . constitutes a waiver of sovereign immunity." *Kohn v. State Bar of Cal.*, No. 20-17316, 2024 WL 4533446, at *1 (9th Cir. Oct. 21, 2024) (first quoting 29 U.S.C. § 794(a); and then citing *Sharer v. Oregon*, 581 F.3d 1176, 1178 (9th Cir. 2009)). Section "504 is 'interpreted coextensively' with Title II 'because there is no significant difference in the analysis of rights and obligations created by the two Acts[.]'" *Morgan v. State Bar of Cal.*, No. 24-3492, 2025 WL 1672874, at *1 (9th Cir. June 13, 2025) (quoting *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021)). As such, the Court's analysis of Plaintiff's ADA claims applies equally to Plaintiff's claims under Section 504 of the Rehabilitation Act. *See id.* ("[B]ecause [the self-represented plaintiff] did not

PAGE 8 – OPINION AND ORDER

that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Sharkey*, 778 F.3d at 771 (quoting 42 U.S.C. § 12132); *see also Woods*, 103 F.4th at 938 ("Title II . . . is further divided into Parts A and B: Part A governs public services generally, and Part B governs the provision of public transportation service." (quoting *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012))).

Plaintiff is the "biological father of a [then-]minor child who was the subject of the underlying family proceedings that g[i]ve rise to this action" and a traumatic brain injury survivor who suffers from a related "cognitive disability that impairs [his] memory, processing speeds, and verbal response under pressure."[9] (SAC at 2.) Plaintiff alleges that Defendants violated the ADA by "exploit[ing] his cognitive disability" to "weaponize[] the family court process," "sever [him] from his daughter," and "irreparably damage his reputation." (*Id.* at 1-2, 5-9, 11-13.) Plaintiff also alleges that "during critical phases of the underlying family court case," he was "so cognitively impaired that he could not meaningfully participate in his own defense," and the state "court system allowed . . . [Defendants] to reframe [his] presence, emotions, and behavior as if he were a fully competent adult choosing irresponsibility or instability" and "erase[]" his "identity as a disabled father." (*Id.* at 1.) He adds that the "central

---

adequately plead a Title II claim [under the ADA], the district court properly dismissed that claim against the individual defendants as well. For the same reason, [the plaintiff] failed to adequately plead a claim under [Section] 504 of the Rehabilitation Act." (citing *Payan*, 11 F.4th at 737)).

[9] The Court notes that the parties' filings reflect that Plaintiff and Hugo's daughter reached the age of majority in 2023. (*See* Hugo Decl. ¶ 3, Ex. 2 at 1 & Ex. 3 at 1, listing relevant dates).

act in this pattern occurred on December 11, 2017, during a custody hearing [at which] Silberger . . . elicited false and defamatory testimony" from Hugo and Plaintiff's "substitute counsel" "failed to object or protect [his] rights, and later advised him not to contest the allegation." (*Id.* at 2, 5, 12-15, citing the December 11, 2017 hearing as the "culmination of this strategy" and citing testimony that Silberger elicited "[d]uring a restraining order continuation hearing").

Plaintiff fails to allege facts sufficient to state a claim under Titles II or III of the ADA. Silberger and Hugo are not "public entit[ies]" subject to suit under Title II. *See* 42 U.S.C. § 12132 (proscribing discrimination by a "public entity"); *see also* 42 U.S.C. § 12131(1) ("The term 'public entity' means . . . (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority."); *cf. Murray v. DOJ-Off. of U.S. Att'y – W. Dist. Wash.*, No. 25-2378, 2025 WL 2092838, at *1 (9th Cir. July 25, 2025) (affirming dismissal of the self-represented plaintiff's ADA and Rehabilitation Act claims because she "failed to allege facts sufficient to state any plausible claim," and citing the "entities covered" under the ADA (citing 42 U.S.C. § 12131(1))). Nor are Defendants "private entit[ies]" that "own[]," lease[], or operate[] a place of public accommodation." *See generally Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (stating that "[t]o prevail on a [disability] discrimination claim under Title III, a plaintiff must show[, among other things,] that . . . the defendant is a private entity that owns, leases, or operates a place of public accommodation" (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007))).

///

Courts have dismissed plaintiffs' ADA claims with prejudice under analogous circumstances. For example, in *Krueger v. Kaul*, No. 19-cv-01470, 2019 WL 13241042, at *1 (E.D. Wis. Oct. 17, 2019), *Krueger v. Stage*, No. 19-cv-01670, 2019 WL 6133695, at *1-2 (E.D. Wis. Nov. 19, 2019), *aff'd*, 805 F. App'x 411 (7th Cir. 2020) (consolidating appeals), the self-represented plaintiff alleged that the defendants, which included the mother of the plaintiff's "children, and [mother's] attorney," "prevented [him] from being with his children" and violated the ADA by "not allow[ing] [his] advocate to assist [him] during [a state court] hearing, even though he suffers from [PTSD] and ha[d] a traumatic brain injury." 2019 WL 13241042, at *1-2; 2019 WL 6133695, at *1-2. In dismissing the plaintiff's lawsuit against the mother and mother's attorney, the district court explained that the plaintiff could not "assert an ADA claim against [the] [d]efendants because the ADA does not recognize a cause of action for [disability] discrimination by private individuals." 2019 WL 6133695, at *1-2 (simplified). The district court also "warned that [the plaintiff] may be subject to sanctions if he file[d] any further frivolous lawsuits." *Id.* at *2.

In the consolidated appeals, the Seventh Circuit affirmed and rejected the plaintiff's "challenges [to] the district court's dismissals of his complaints alleging violations of his right under the [ADA] . . . to have a veteran's 'advocate' accompany and communicate for him in a state-court [paternity] proceeding." 805 F. App'x at 412. The Seventh Circuit explained that the "district court dismissed the [plaintiff's] complaints at screening . . . for failing to state a claim," and held that the district court was "correct to dismiss [the plaintiff's] claims against the [mother of his children and] petitioner [in the paternity case] and [the mother's] attorney under Title II of the [ADA] because that section covers discrimination only by public entities." *Id.* at 413-14

(citing *Ashby v. Warrick Cnty. Sch. Corp.*, 908 F.3d 225, 230, 234 (7th Cir. 2018) (private museum)).

Similarly, in *Burns v. Humboldt Recovery Center, Inc.*, No. 22-cv-00880, 2022 WL 20286877, at *1-2 (N.D. Cal. Mar. 1, 2022), *aff'd*, 2023 WL 4313125, at *1 (9th Cir. July 3, 2023), the district court screened and dismissed with prejudice the self-represented plaintiff's initial complaint because he failed to state a claim under "Title II" of the ADA. 2022 WL 20286877, at *1-2 (citing *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)). In affirming the district court's dismissal with prejudice for failure to state a claim, the Ninth Circuit construed the plaintiff's complaint as asserting a disability discrimination claim under Title III (as opposed to Title II) of the ADA and noted that to state such a claim, the plaintiff was required but lacked the ability to allege that the "defendant [was] a private entity that owns, leases, or operates a place of public accommodation[.]" 2023 WL 4313125, at *1 (quoting *Ariz. ex rel. Goddard*, 603 F.3d at 670). The Ninth Circuit in turn held that "[t]he district court did not abuse its discretion in denying leave to amend because amendment would be futile." *Id.* (citing *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011)).

Similarly here, the Court finds that Plaintiff fails to allege facts sufficient to state claims against Defendants under the ADA or Rehabilitation Act. *See Bennett v. Newsom*, No. 23-cv-05905, 2024 WL 1559997, at *3 & n.3 (N.D. Cal. Apr. 9, 2024) (explaining that "Title II [of the ADA] provides disabled individuals redress for discrimination by a 'public entity[,]' . . . [which] does not include individuals," and that courts have held that "defendants cannot be sued as individuals under the Rehabilitation Act because they are not a 'program or activity,'" let alone one "receiving [f]ederal financial assistance") (simplified). For two reasons, the Court also finds that amendment of Plaintiff's ADA and Rehabilitation Act claims would be futile.

First, the Court finds that amendment would be futile because Plaintiff cannot allege that either defendant is a "private entity," "place of public accommodation," or "program or activity" within the meanings of the ADA or Rehabilitation Act. *See Allen v. Cellco P'ship*, No. 24-4573, 2025 WL 1367824, at *1 (9th Cir. May 12, 2025) (noting that Congress provided an "illustrative list of twelve types of private entities that qualify as public accommodations" under Title III, and "[a]ll the items on this list . . . have something in common[:] [t]hey are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services") (simplified); *Dragasits v. Archuleta*, No. 24-cv-01257, 2024 WL 4983154, at *3 (S.D. Cal. Dec. 4, 2024) ("The complaint also fails to state an ADA claim because only individual defendants are named. The 'ADA applies only to public entities.'" (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002))); *Lovell*, 303 F.3d at 1052 ("The ADA applies only to public entities, whereas the [Rehabilitation Act] proscribes discrimination in all federally-funded programs.").

Second, the Court finds that amendment would be futile because Plaintiff's claims are time-barred by the applicable two-year statute of limitations. Plaintiff challenges Defendants' actions during state court proceedings that ended in March 2021, and he did not file this action until May 2025. *See Smith v. Hein*, No. 22-35658, 2023 WL 5011748, at *1 (9th Cir. Aug. 7, 2023) (affirming the district court's dismissal of the self-represented plaintiff's "action alleging disability discrimination under federal statutes and attempting to challenge a prior state court judgment," and noting that dismissal of the plaintiff's ADA and Rehabilitation Act claims was "proper because the[] claims [we]re barred by the two-year statute of limitations" (first citing OR. REV. STAT. § 12.110(1); then citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 n.2 (9th Cir. 2002); and then citing *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812,

823 n.11 (9th Cir. 2001))); *Reyes v. City of Hillsboro*, No. 23-35106, 2025 WL 586363, at *1 (9th Cir. Feb. 24, 2025) (noting that the self-represented plaintiff's ADA and Rehabilitation Act claims were both subject to ORS § 12.110(1)'s two-year statute of limitations (first citing OR. REV. STAT. § 12.110(1); then citing *Pickern*, 293 F.3d at 1137 n.2; and then citing *Douglas*, 271 F.3d at 823 n.11)).

For these reasons, the Court dismisses Plaintiff's ADA and Rehabilitation Act claims with prejudice.

**B.    Section 1983**

Plaintiff also asserts constitutional claims against Defendants under Section 1983. (*See* SAC at 1-2, consolidating "all facts and claims," including under Section 1983 for "coordinated conduct that violated Plaintiff's constitutional rights"). Plaintiff's Section 1983 claims fail and are incurable.

"To state a claim under [Section] 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002) ("One of the requisite elements for stating a claim under [Section] 1983 is that the violation was committed by a 'person' acting under color of state law." (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989))). "The 'under color of law' requirement . . . is the same as the Fourteenth Amendment's 'state action' requirement." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982)).

///

Plaintiff's Section 1983 claims fail because Hugo is a private actor and Silberger is a private attorney. Plaintiff fails to allege any facts that establish state action and appears incapable of doing so. *See Kiss v. Best Buy Stores, Ltd. P'ship*, No. 23-35004, 2023 WL 8621972, at *1 (9th Cir. Dec. 13, 2023) (stating that the plaintiff's "claims brought pursuant to . . . [Section] 1983 fail because [the] [d]efendants are private actors and [the plaintiff did] not allege any facts that establish state action"); *Wood v. County of Contra Costa*, No. 21-16183, 2022 WL 3681309, at *1 (9th Cir. Aug. 25, 2022) (holding that "[t]he district court properly dismissed [the self-represented] plaintiffs' claims against [the] defendant . . . because an attorney is not a state actor under [Section] 1983," and noting that "a private attorney or a public defender does not act under color of state law within the meaning of [Section] 1983" (citing *Polk County v. Dodson*, 454 U.S. 312, 317-19 (1981))).

"A private actor may be subject to [Section] 1983 liability if the plaintiff can show that the actor's conduct was 'fairly attributable to the State.'" *Kiss*, 2023 WL 8621972, at *1 (quoting *Lugar*, 457 U.S. at 937)). Plaintiff's claims fail on the "second prong" because in this context, "Defendants cannot be fairly characterized as state actors." *Id.* (reaching the same conclusion). Plaintiff's Section 1983 claims are also time-barred. *See, e.g.*, *Reyes*, 2025 WL 586363, at *1 (holding that the "district court properly dismissed [the self-represented plaintiff's Section 1983] action as time-barred because [he] failed to file this action within the applicable [two-year] statute[] of limitations," and explaining that Oregon law "provid[es] a two-year statute of limitations for personal injury claims" and that the "statute of limitations for [Section] 1983 claim[s] is the state law statute of limitations for personal injury claim[s]" (first citing OR. REV. STAT. § 12.110(1); and then citing *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009))).

///

PAGE 15 – OPINION AND ORDER

For these reasons, the Court dismisses Plaintiff's Section 1983 claims with prejudice. *See Wood*, 2022 WL 3681309, at *1 (affirming dismissal with prejudice of the self-represented plaintiff's Section 1983 claim against a private attorney, which concerned the plaintiff's children's placement into foster care, and noting that "a private attorney . . . does not act under color of state law within the meaning of [Section] 1983" (citing *Dodson*, 454 U.S. at 317-19)); *Robinson v. Borzakian*, No. 21-55599, 2022 WL 885148, at *1 (9th Cir. Mar. 25, 2022) (affirming the district court's screening stage dismissal with prejudice of the self-represented plaintiff's "claims . . . against [his] appointed counsel because court-appointed attorneys are not state actors under [Section] 1983" (citing *Dodson*, 454 U.S. at 317-19)); *Sanders v. JD Home Rentals*, No. 23-15288, 2024 WL 3508519, at *1 (9th Cir. July 23, 2024) (noting that "private parties are generally not state actors" (citing *Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991))).

### C.    Section 1985

Plaintiff also asserts a conspiracy claim against Defendants under Section 1985(3). (*See* SAC at 1-2, 4, 7, asserting a disability discrimination based theory of liability under Section 1985(3), after alleging that Defendants violated Plaintiff's rights to due process and equal protection).

A plaintiff must allege four elements to state a claim for "conspiracy to discriminate" under Section 1985(3):

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

///

///

*Rote v. Comm. on Jud. Conduct & Disability of the Jud. Conf. of the U.S.*, 577 F. Supp. 3d 1106, 1117, 1128 (D. Or. 2021) (quoting *United Bhd. of Carpenters & Joiners of Am., Loc. 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).

Plaintiff fails to allege facts sufficient to state a claim against Defendants for conspiring to discriminate against him in violation of Section 1985(3). Plaintiff focuses almost exclusively on Hugo's allegedly "false allegation of rape" at the December 11, 2017 hearing, which the state court addressed in a post-hearing order. (*See* SAC at 11-13, referring repeatedly to Plaintiff's allegations regarding Huge's "false" and "fabricated" testimony and "allegation of rape," Silberger "prompt[ing] [Hugo] to falsely accuse [Plaintiff] of rape for the first time in open court" and for "strategic purposes," which Hugo had never previously raised, and Plaintiff claims was "not supported by [other] evidence" and placed him "under public suspicion without due process"; *id.* at 14-15, describing Plaintiff's bar complaint and former counsel's "failure to object to a fabricated allegation during a December 11, 2017 hearing," and alleging that this was "not competent legal representation," a "devastating lapse in advocacy for a disabled client" and "during a critical proceeding" and stemmed from Plaintiff's counsel's legal advice and view that the issue was "'tangential' to [any] custody issues"; Fry Decl. Ex. 14 at 1, attaching the court's findings).

Notably, Plaintiff advances only conclusory conspiracy claims against Defendants (not facts plausibly suggesting the existence of a conspiracy) and does not dispute facts underlying the FAPA petitions that Hugo obtained and renewed for several years. *See Smith v. United States*, No. 6:22-cv-00732-MK, 2024 WL 2941365, at *4 (D. Or. May 31, 2024) ("[C]ourts [must] . . . show special solicitude to pro se plaintiffs' pleadings. However, conclusory allegations based on information and belief are insufficient, they must be supported by factual

assertions allowing a plausible inference.") (simplified); *see also Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) ("Like [Section] 1983, which requires the wrongdoer to be a state actor, [Section] 1985(3) requires at least one of the wrongdoers in the alleged conspiracy to be a state actor.") (simplified). Furthermore, Plaintiff's Section 1985 claims are time-barred. *See Hanson v. La Flamme*, 761 F. App'x 685, 688 (9th Cir. 2019) (noting that "[l]ike [Section] 1983, [Section] 1985 borrows the forum [s]tate's statute of limitations for personal injury actions") (simplified); *Chalkley v. Oregon*, No. 6:25-cv-00985-AA, 2025 WL 1664357, at *2 (D. Or. June 12, 2025) (applying Oregon's two-year statute of limitations for personal injury actions to the self-represented plaintiff's claims under Sections 1983 and 1985).

In summary, Plaintiff fails to state a conspiracy claim under Section 1985(3) and amendment would be futile. *See Nordin v. Scott*, No. 22-151816, 2023 WL 4418595, at *1 (9th Cir. July 10, 2023) (rejecting the self-represented plaintiff's "appeal[] . . . from the district court's judgment dismissing his [Sections] . . . 1983 and 1985 action alleging constitutional claims arising from the issuance of a domestic violence restraining order," because the plaintiff "failed to allege facts sufficient to establish state action or a conspiracy," and noting that "[m]erely resorting to the courts and being on the winning side of a [case] does not make a party a co-conspirator or a joint actor with the judge" (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980))); *Rote*, 577 F. Supp. 3d at 1129 (dismissing and noting that the Supreme Court has "recognized a class-of-one equal protection claim only 'where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'" (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Accordingly, the Court dismisses Plaintiff's claims under Section 1985(3) with prejudice.

### D.    Civil RICO

Plaintiff brings his remaining federal claims against Defendants under the civil RICO statute. (*See* SAC at 7-8, reflecting that Plaintiff alleges that Defendants violated 18 U.S.C. §§ 1962(c) and (d)).

"Under RICO, it is 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (quoting 18 U.S.C. § 1962(c)). The Ninth Circuit has explained that "[t]o state a claim under [Section] 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc)). The Ninth Circuit has also explained that "[a] 'pattern requires at least two acts of racketeering activity[,]' . . . [and that] '[r]acketeering activity is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice.'" *Id.* (first quoting 18 U.S.C. § 1961(5); and then quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)).

Relatedly, Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id.* at 559 (quoting 18 U.S.C. § 1962(d)). In other words, a plaintiff "cannot claim that a conspiracy to violate RICO existed if [he fails] adequately [to] plead a substantive violation of RICO." *Id.* (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). Thus, Plaintiff's Section 1962(d) claim rises or falls with his Section 1962(c) claim. *See id.* ("Because we conclude that the section 1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also cannot be

saved. Denial of leave to amend the complaint to add this claim was therefore proper."); *Sadorra v. Starlight Dunes HOA*, No. 24-1754, 2025 WL 1500514, at *1 (9th Cir. May 27, 2025) (affirming the district court's denial of the self-represented plaintiff's application to proceed in forma pauperis and dismissal of the plaintiff's RICO claim, and noting that the plaintiff failed to state a claim, the plaintiff's complaint was frivolous, and to "plead a RICO conspiracy claim, the plaintiff must first adequately plead a substantive violation of RICO" (citing *Sanford*, 625 F.3d at 557, 559)).

Plaintiff fails to allege facts sufficient to state a claim under the civil RICO provisions upon which he relies. Plaintiff's RICO allegations are conclusory, legally insufficient, and time-barred.

"The limitations period for civil RICO claims is four years." *Douglas v. Kalanta*, No. 23-15104, 2024 WL 1795160, at *2 (9th Cir. Apr. 25, 2024) (citing *Agency Holding Corp. v. Malley-Duff Assocs.., Inc.*, 483 U.S. 143, 156 (1987)); *see also Stringham v. Flagstar Bank*, No. 6:18-cv-01046-AA, 2019 WL 11693409, at *3 (D. Or. Mar. 30, 2019) (making the same observation). "The Ninth Circuit has 'faithfully followed' the 'injury discovery' rule, which has two components[.]" *Douglas*, 2024 WL 1795160, at *2 (quoting *Grimmett v. Brown*, 75 F.3d 506, 510-11 (9th Cir. 1996)). The first component of the "injury discovery rule" is that the "RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action[; in other words, he] need not discover that the injury is part of a pattern of racketeering for the period to begin to run." *Id.* (quoting *Grimmett*, 75 F.3d at 510). The second component of the "injury discovery rule is the separate accrual rule, which provides that a new cause of action accrues for each new and independent injury, even if the RICO

violation causing the injury happened more than four years before." *Id.* (quoting *Grimmett*, 75 F.3d at 510).

Plaintiff relies on the following alleged RICO predicate: (1) "obstruction of justice" under 18 U.S.C § 1503, (2) "false testimony" and "subornation of perjury" under 18 U.S.C § 1622, (3) "mail and wire fraud," and (4) "reputational defamation[.]" (SAC at 4, 7, 25.) Before turning to the injury discovery rule, the Court notes that "allegations of perjury may amount to 'obstruction of justice' under [Section] 1503 and . . . qualify as 'racketeering activity[,]' . . . [but] the alleged perjury [here] all took place in the context of . . . state [court] proceeding[s] and . . . [Section] 1503 . . . only applies to obstruction of justice in *federal* court proceedings." *Smith v. Aldridge*, No. 3:17-cv-01485-HZ, 2018 WL 1434813, at *5 (D. Or. Mar. 22, 2018) (simplified). Thus, Plaintiff's RICO claim fails on this ground. *See Samuelson v. Jewell Sch. Dist. 8*, 725 F. Supp. 3d 1195, 1221 (D. Or. 2024) (holding that the plaintiff "failed to state a RICO claim under [Section] 1962(c)" and explaining that Section 1503 "refer[s] to 'any court of the United States,'" "obstruction of justice[] [under Section] 1503 involves obstruction of federal proceedings," and the plaintiff "alleged no facts about any action taken by any [d]efendant related to any federal proceeding" (first quoting 18 U.S.C. § 1503; and then citing *Smith*, 2018 WL 1434813, at *5)).

With respect to mail and wire fraud, these are "fraud crimes" and Plaintiff fails to allege any "facts sufficient to support a finding of the commission of those crimes—let alone done so under the applicable [Rule 9(b)] heightened pleading standard." *Samuelson*, 725 F. Supp. 3d at 1220-21 & n.27 (simplified). Plaintiff's allegations involving in person conduct also fail. *See id.* at 1221 (addressing deficiencies in mail and wire fraud predicates under the civil RICO statute

and highlighting that the "allegations involve[d] in person conduct, not electronically or through the mail").

Turning to the injury discovery rule, Plaintiff's alleged RICO predicates are based largely on Hugo's testimony at the state court hearing held on December 11, 2017. (*See* SAC at 1-3, 5-9, 11-15.) Significantly, however, Plaintiff alleges that his then-counsel failed to object or move to strike Hugo's testimony at the December 2017 hearing and "allowed [Hugo's rape] accusation to remain uncontested in official record," which not only "directly impacted the outcome of [the] restraining order and [his] ability to see [his] daughter" but is also why he "immediately contacted [his counsel] by email . . . asking why he had not challenged the claim and expressing how deeply it was affecting [his] mental health and reputation." (*Id.* at 14-15.) Thus, Plaintiff acknowledges that he was aware in December 2017 that he was injured by Hugo's testimony. Accordingly, the Court finds that the four-year RICO limitations period bars Plaintiff's claims.

Finally, the Court notes that (1) Plaintiff does not dispute many facts that Hugo advanced in obtaining and renewing FAPA restraining orders against Plaintiff, which supports a finding that his RICO claims are incurable, and (2) Plaintiff's RICO allegations conflict with many of the state court's findings of fact and post-December 2017 hearing order (*see* Fry Decl. Ex. at 3). *See generally Carr v. Reed*, 316 F. App'x 588, 589 (9th Cir. 2009) ("[The self-represented plaintiff] appeals pro se from the district court's summary judgment for defendants in his action alleging violations of state and federal law arising from state court domestic violence proceedings. . . . The district court properly determined that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine to hear [the plaintiff's] claims that prior state court rulings are invalid and void because these claims constitute a 'forbidden de facto appeal' of those state court decisions.").

For these reasons, the Court dismisses Plaintiff's civil RICO claims with prejudice because they are incurable, time-barred, and amount to attempts to relitigate the state court's findings.

## II.    STATE LAW CLAIM

Plaintiff asserts a state law claim against Defendants for intentional infliction of emotional distress ("IIED"). (*See* SAC at 7-8, listing this claim as Plaintiff's sixth and only state law cause of action). For the reasons previously explained, Oregon's two-year statute of limitations bars Plaintiff's IIED claim. *See Stupek v. Wyle Labs. Corp.*, 963 P.2d 678, 679 (Or. 1998) (noting that IIED claims "have a two-year statute of limitations" (citing Or. Rev. Stat. § 12.110(1))).

Granting Plaintiff leave to amend his IIED claim is futile because it is clear that this claim is stale and cannot be cured. Granting Plaintiff leave to assert a defamation claim would also be futile because Oregon's one-year statute of limitations on defamation actions bars such a claim, and "defamation claims for statements made in judicial and quasi-judicial proceedings are barred by absolute privilege." *Brooks v. Agate Res., Inc.*, 836 F. App'x 471, 475 (9th Cir. 2020) (reaching similar conclusions) (first citing Or. Rev. Stat. § 12.120(2); and then citing *Wallulis v. Dymowski*, 918 P.2d 755, 761 (1996) (en banc)); *see also Merrill v. Lane Fire Auth.*, No. 22-35731, 2023 WL 5527850, at *2 (9th Cir. Aug. 28, 2023) (affirming the "district court's determination that [the plaintiff's] defamation claim was barred by [Oregon's one-year] statute of limitations," and explaining that "even if the discovery rule applie[d], a defamation claim is barred if the plaintiff 'actually knew of [the] alleged defamation or, in the exercise of reasonable care, should have known of it more than one year from the date of the filing of the complaint,'" and the plaintiff's claim was time-barred because he was "aware of the alleged defamation" (i.e., "accus[ations] . . . of criminal and sexual misconduct") "by early by early 2019, more than a year

before he filed his complaint in June of 2020" (first citing OR. REV. STAT. § 12.120(2); and then

quoting *Holdner v. Or. Trout, Inc.*, 22 P.3d 244, 248 (Or. Ct. App. 2001))).

## CONCLUSION

For the reasons stated, the Court GRANTS Silberger's motion to dismiss (ECF No. 40)

and Hugo's joinder therein, and DISMISSES Plaintiff's second amended complaint with

prejudice. The Court also DENIES AS MOOT Plaintiff's motions for judicial oversight and a

protective order. (*See* ECF No. 36 at 19, 26-27, presenting these motions in the complaint's

exhibits).

**IT IS SO ORDERED.**

DATED this 30th day of October, 2025.

*Stacie F. Beckerman*

———————————————
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 24 – OPINION AND ORDER